CARL H. SMITH *et al. vs.* JOSEPH ROBERGE.

AUGUST 1, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   This is an action in assumpsit in which the jury returned a verdict for the plaintiffs in the sum of $2050, including interest.   Defendant's motion for a new trial was heard and denied.   The case is before us on defendant's exceptions to this decision, to portions of the charge, and to the refusal of the trial justice to give certain requests to charge.

The controlling question in this case concerns an oral contract for seventeen carloads of hay that the parties made in LeRoy, Minnesota, about the middle of February, 1945, when apparently there was a shortage of that commodity in Rhode Island and surrounding territory because of the Canadian embargo on hay due to war conditions. The determination of this question rests mainly on the credibility of the plaintiff Smith and of the defendant, who were the only witnesses to testify as to the contract.

It is undisputed that the defendant, a wholesale dealer in hay in the city of Woonsocket, in this state, went to LeRoy and engaged the plaintiffs, who also dealt in that commodity, to assist him in buying a quantity of hay for delivery in Rhode Island and neighboring territory as directed by him; that for several days the defendant, in company with one or the other of the plaintiffs, visited a number of farms and examined hay in stacks in the field and in barns; and that the oral contract in question here was entered into by the parties. No claim is made by the defendant that the hay was not shipped according to directions, and there is no evidence that the plaintiffs made any representations as to how the hay would stand up while in transit for a considerable period of time.

The controversy between the parties relates mainly to the quality of the hay that was called for by the contract. The evidence on this point is highly conflicting and irreconcilable. The evidence for the plaintiffs was that all the hay in the seventeen carloads was selected by the defendant personally; that such hay was of different qualities and ranged in price from $16 to $25 a ton; that the hay so selected by the defendant was inspected and found in good condition when delivered to the carrier; and that the defendant made no complaints as to the quality or condition of the hay until his letter to them of April 21, 1945, which was shortly before the Canadian embargo on hay was lifted.

The defendant's testimony is quite different. He testified that while in LeRoy he selected only a limited quantity of

high-grade hay and that the agreement with the plaintiffs was that whatever other hay they shipped to him, at a price of $21 to $22.50 a ton, must be of the same quality, that is, no prairie hay, only hay that was stored in the barn; No. 1 hay, 50 to 75 per cent clover, June cut; good hay, to produce milk, to feed "Milch cows, not dry stock." He further testified that the hay in nine of the seventeen carloads was musty or smoky prairie hay, unfit to feed to milch cows; that when he complained to the plaintiffs by telephone about such hay they told him to "Do the best you can with it"; and that he sold some of it at a loss, and some he destroyed because unmarketable for any purpose. Without going into details involving figures and computations, the substance of defendant's claim was that his total loss due to the quality and condition of the bad hay equalled the balance of $2613.07 claimed by the plaintiffs in this action.

According to the seventeen duplicate bills of lading in evidence the first carload of hay was shipped on February 20, 1945 and the last one on March 8, 1945. Allowing three weeks for transportation, which is the maximum time appearing in evidence, the last shipment was received by the defendant about the end of March. On April 21 he sent plaintiffs a letter in which he complained about the *condition* of seven carloads of hay. In contrast with his testimony at the trial, he made no complaint in this letter as to the *quality* of the hay in those shipments.

Furthermore, there is in evidence an undated letter to the plaintiffs on defendant's billhead in which he identified by freight car numbers fifteen carloads of hay that he had received up to that time. Checking the numbers of those cars with the numbers of cars on the duplicate bills of lading, it is clear that this letter was sent early in March. Opposite car number 26,413 in that letter we find the notation "musty hay". This is the only indication in the letter of any complaint by the defendant as to either the quality or the condition of the hay. It also appears in evidence that on March 27 the defendant sent plaintiffs $1000 on account

by telegraphic money order, apparently in answer to a request from the plaintiffs for money.

The law applicable in this case is not in dispute, provided the terms of the contract are first determined. Different provisions of the sales act, general laws 1938, chapter 459, are invoked by the parties in support of their respective contentions. The plaintiffs take the position that since the defendant examined *all* the hay in LeRoy, which hay was shipped to him in good condition, there was no implied warranty either as to quality or fitness. The defendant, on the other hand, maintains that as he bought almost all the hay by description and made known to the plaintiffs the purpose for which it was to be used, there was an implied warranty of quality and also of fitness for that purpose.

The defendant briefed exceptions numbered 12, 13, 14 and 15. All exceptions not briefed or argued by him are deemed to be waived. Under exception 12 he argues that it was prejudicial error for the court to charge that if the selecting of the hay was left to the plaintiffs they were expected to deliver merchantable hay. The error, according to him, was that the trial justice failed to further instruct the jury that the hay was to be fit for the particular purpose for which the plaintiffs knew it was to be used, that is, to feed to milch cows. "Hence", he says in his brief, "it might be merchantable hay but not fit for the defendant's particular purpose."

The defendant would have good cause to complain if the trial justice had omitted to instruct the jury on the point under consideration elsewhere in the charge. But this is not so. Preceding the part of the charge to which defendant objects, the trial justice clearly instructed the jury that if the defendant said to the plaintiffs: "I want certain good hay, I want June-cut hay, to be fed to milking cows", it was their duty to ship merchantable hay of that description, namely, hay that "could be sold in hay and grain stores, and hay that would be bought by farmers and owners of cattle and consumers of hay." A charge is not to be judged

by isolating a statement therefrom and then drawing a conclusion as to its competency from such statement. We have repeatedly said that a charge must be read as a whole and not piecemeal. Exception 12 is overruled.

What we have just said applies with equal force to defendant's exception 13 under which he contends that the trial justice was in error when he instructed the jury that if a buyer receives goods unconditionally and finds them defective he cannot deliberately dispose of those goods without notifying the seller. Here again the defendant disregards the fact that immediately preceding such statement the trial justice instructed the jury that if the defendant did complain to the plaintiffs about the quality or condition of the hay and was told by them to dispose of it "in the best manner possible", the defendant was justified in so doing. This exception is overruled.

Defendant's exception 14 is to the refusal of the trial justice to give certain instructions as set forth in five requests to charge. These requests relate to the law of implied warranty and to a buyer's right to damages by way of recoupment for breach of warranty. We have examined the charge in the light of such requests and find no error on this point. In view of the highly conflicting evidence, the trial justice, apparently to prevent confusion, abstained from using technical terms and charged the jury in simple language, which fairly covered all the elements suggested in the defendant's requests to charge. It is settled that a party is not entitled to have the trial justice charge the jury in any particular form of language. *Hayman* v. *Union Corporation,* 66 R. I. 11. Exception 14 is overruled.

Defendant's exception 15 is to the denial of his motion for a new trial. Under this exception he contends that the trial justice did not follow our well-established rule governing a motion for a new trial because, at the outset of his decision from the bench, he remarked that a judge "does not know what transpires in the jury room, and in a measure all verdicts are compromise verdicts." Disregarding the rest

of the decision and basing his contention solely on that incidental and unnecessary observation, the defendant contends that the trial justice was "in effect saying that the verdict in the instant case was a compromise verdict, but even so he could not set it aside."

■ When the observation so strongly relied upon by the defendant is read with its context, it is obvious that the trial justice merely meant that, as a rule, verdicts could not be analyzed with absolute certainty. We have carefully examined the decision of the trial justice and find no violation of our rule governing the consideration of a motion for a new trial. In this situation and especially since the decision in the case rests to a great extent on the credibility of the witnesses, we cannot say that the trial justice was clearly wrong in denying defendant's motion for a new trial. This exception is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

Moss, J., did not participate in the decision.

*Hinckley, Allen, Tillinghast & Wheeler, S. Everett Wilkins, Jr.*, for plaintiffs.

*A. Norman LaSalle*, for defendant.